|  |  |  |
|---|---|---|
| United States of America, | ) | CR 12-0262-TUC-DCB(LAB) |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Pedro Valles, Ruben Cordova-Bermudez, | ) | |
| Defendants. | ) | |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

The District Court referred this case to the Magistrate Judge for a hearing on Defendant Valles' motion to suppress evidence derived from illegal wiretaps and electronic interecpts; request for judicial notice and for *Franks* hearing. (Doc. 138). Defendant Cordova-Bermudez filed a joinder. (Doc. 188). The defendants argue that all communications intercepted from telephone number 520-339-5110, pursuant to court order, must be suppressed because the government made no showing of necessity. The defendants request a *Franks* hearing claiming that the agent's affidavit in support of the wiretap application contained material omissions and misrepresentations. They ask the Court to take judicial notice of the affidavits of Special Agents Leander Morris and Bryan Taylor, the Drug Enforcement Agency (DEA) co-case agents in this case, which the Court did based on the government's agreement.

A hearing was conducted on January 15, 2013. No witnesses testified regarding this motion. The parties relied on the affidavit of DEA Special Agent Leander L. Morris in

1  support of the application for the wiretap order and the three affidavits of DEA Special Agent
2  Brian C. Taylor in support of an application to obtain location data for cellular telephone
3  number 520-399-5110 and two subsequent extensions. (Doc. 138 -1, pp. 25-71; Doc. 138-2,
4  pp. 10-19, 27-39, 47-61).

**Charge:**

Defendants Valles and Cordova-Bermudez are charged by superseding indictment in Count 1 with conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, or 50 grams or more of actual methamphetamine, in violation of Title 21 United States Code §§ 841(a)(1), 841(b)(1)(B)(vii) and 846. Cordova-Bermudez alone is charged in Count 2 with possession with intent to distribute 3.5 kilograms of methamphetamine, in violation of Title 21 United States Code §§ 841(a)(1) and 841(b)(1)(A)(viii).

**Motion to Suppress Wiretap Evidence:**

The defendants argue that their Fourth Amendment rights were violated when their conversations were unlawfully intercepted, in spite of a Court order, because the police did not exhaust normal investigative techniques and boilerplate recitals did not provide specific grounds for the wiretap order. Defendants do not argue for suppression based on a lack of probable cause for the interceptions.

The government claims that normal investigative procedures were tried and either failed to meet the goals of the investigation, or appeared unlikely to succeed, or were too dangerous. It explains that traditional investigative techniques had some measure of success but could not expose the full scope and breadth of the conspiracy.

**Motion for *Franks* Hearing:**

The defendants argue that they are entitled to a *Franks* hearing because Agent Morris' affidavit contains material omissions and misrepresentations. Specifically, the defendants claim that Agent Morris advised the Court that trash searches would not work, but agents employed that technique three weeks later and found incriminating evidence. Eight days after Agent Morris told the Court that vehicle tracking devices were not feasible, he placed

1 such a device on Cordova-Bermudez's vehicle. The Court was not told that agents planned
2 to seek an extension of the cellular geo-location warrant one day after the wiretap application
3 was submitted. The defendants also argue that Agent Morris misled the Court when he
4 opined that geo-location equipment does not provide exact locations in real-time. The latter
5 argument and the remaining arguments are based on comparing Agent Morris' affidavit for
6 the wiretap to Agent Taylor's affidavits for the geo-location order.

7 The government responds that the defendants are not entitled to a *Franks* hearing because
8 they have not made a substantial showing that Agent Morris' affidavit contains an actual
9 falsity that was either deliberate or the result of a reckless disregard for the truth. Neither
10 have they identified any falsity that is material such that its redaction from the affidavit
11 would result in insufficient evidence for a finding of probable cause or necessity.

12 The court concludes that the District Court properly found necessity for the wiretap and
13 that the defendants have not made a substantial showing of any falsehood or material
14 omission in Agent Morris' affidavit such that a *Franks* hearing is required. Evidence
15 obtained from the wiretap interceptions of telephone number 520-339-5110 and all derivative
16 evidence is admissible at trial in the government's case-in-chief.

17 **FACTS:**
18 **NECESSITY REQUIREMENT -**

19 Leander Morris is a Special Agent with the DEA. His affidavit of 10/18/11 was filed in
20 support of the government's application for an order authorizing the interception of wire
21 communications to and from telephone number 520-399-5110 (target telephone). Based on
22 that application and affidavit, the district court judge found probable cause and issued an
23 order authorizing the interception of communications to and from the target telephone.

24 Agent Morris' affidavit is 46 pages long. It lists five goals and objectives of the
25 investigation as follows: 1) identifying members of the criminal organization; 2) identifying
26 the manner, scope and extent of the criminal enterprise; 3) identifying stash houses and the
27 manner of transportation and distribution of the controlled substances; 4) identifying the full
28 extent of the enterprise as it affects interstate or foreign commerce; and 5) locating cash

proceeds from the sale of controlled substances, including attempts to launder or disguise proceeds.

Five target subjects are identified. Two of those are identified as the expected targets of the interceptions. Nineteen pages of Agent Morris' affidavit address in detail the use of alternative investigative techniques that have been tried and failed, appear reasonably unlikely to succeed if tried, or are too dangerous to employ. The techniques discussed are: 1) comprehensive financial investigation, 2) physical surveillance of nine separate properties, 3) use of a confidential source, 4) use of undercover agents, 5) grand jury subpoenas, 6) interviews of witnesses/co-conspirators, 7) toll records, pen registers, and trap and trace records, 8) search warrants, 9) video surveillance/pole cameras, 10) trash searches analyzed for nine separate addresses, 11) mail covers at nine separate addresses, 12) geo-location information, and 12) vehicle tracking devices.

The techniques are analyzed specifically in relation to the present case as well as in general, based on the agent's experience, and the experience of other agents, in conducting investigations of this type. As each technique is discussed, Agent Morris explains any evidence successfully acquired and the limitations of each investigative technique.

*FRANKS* **HEARING -**

The facts regarding the defendants' motion for a *Franks* hearing are contained in the affidavits of Special Agents Morris and Taylor. The affidavits support different types of applications, a wiretap application versus a geo-locator application for a cellular telephone. Different but relevant facts are contained in each affidavit. Neither affidavit contradicts the other.

**DISCUSSION:**

**Necessity Requirement** - Title 18 U.S.C. Section 2518(3)(a), (b), (c) and (d) allows a judge to enter an ex parte order authorizing a Title III wiretap of a phone if four requirements are met. There must be probable cause to believe that: 1) an individual is committing, has committed, or is about to commit certain enumerated offenses; 2) relevant communications will be intercepted by the wiretap; 3) normal investigative procedures have been tried and

- 4 -

1  have failed, or reasonably appear unlikely to succeed if tried, or are too dangerous; and 4)
2  the targeted persons will use the facility communications.

3      The defendants do not contest probable cause for the interceptions. They challenge only
4  requirement 3) above, whether the issuing judge correctly decided the necessity requirement.
5  The judge should interpret the necessity restriction "in a practical and commonsense
6  fashion." *U.S. v. Brown*, 761 F.2d 1272, 1275 (9th Cir. 1985). The issuing judge's decision
7  is reviewed for abuse of discretion, even at the district court level, to resolve a motion to
8  suppress evidence. *U.S. v. Gomez*, 358 F.3d 1221, 1225 (9th Cir. 2004); *U.S. v. Ai Le*, 255
9  F.Supp. 2d 1132, 1133-34 (E.D. Cal. 2003).

10      The government must prove necessity before it is authorized to use wiretaps as an
11  investigative tool. *U.S. v. Gonzalez, Inc.*, 412 F.3d 1102, 1110 (9th Cir. 2005). Proof of
12  necessity is required to overcome the statutory presumption against use of wiretaps because
13  they are such an intrusive investigative tool. *U.S. v. Blackmon*, 273 F.3d 1204, 1207 (9th Cir.
14  2001). The Ninth Circuit employs a "common sense approach" to determine the
15  reasonableness of the government's good faith efforts to use normal investigative procedures,
16  when reviewing necessity. *Id*.

17      Prior to seeking authorization for the wiretap, agents in the present case employed
18  numerous traditional investigative techniques, including: 1) physical surveillance of homes,
19  vehicles and meetings during a four month period of time; 2) traffic stops of multiple
20  vehicles; 3) geo-locator data from the target cellular telephone; 4) telephone subscriber
21  information for multiple cellular telephones; 5) motor vehicle division records for multiple
22  vehicles; 6) intercepted calls from state authorized wire communications orders; 7) toll
23  records for the target phone for a three and on-half month period, revealing more than 8,500
24  calls, telephone numbers associated with DEA Phoenix investigative targets, and numerous
25  calls to and from a Mexico-based cellular telephone believed to be used by a man under
26  investigation for drug trafficking; 8) one confidential source; 9) utilities checks that revealed
27  the name of a suspected methamphetamine trafficker who was a target of a DEA Phoenix
28  investigation; 10) mail covers for nine addresses, requested but not completed; 11) financial

1 records, requested but not completed.

2 Agents did not use the following techniques prior to applying for the wiretap: 1)
3 undercover officers; 2) grand jury subpoenas; 3) interviews of subjects and associates;
4 4) search warrants; 5) video surveillance/pole cameras; 6) trash searches; or 7) vehicle
5 tracking devices. Agent Morris explains, in relation to this case and in general terms, why
6 these investigative methods were not employed, and/or indicates that they will continue to
7 be explored. Several of these methods were used after the Court signed the wiretap order.

8 It is apparent that the application for the wiretap was not the initial step in the
9 investigation. Law enforcement agents "need not exhaust every conceivable alternative
10 before obtaining a wiretap." *U.S. v. McGuire*, 307 F.3d 1192, 1196-97 (9th Cir. 2002). In
11 a case such as the present case, involving a large-scale conspiracy, the Ninth Circuit has
12 upheld a finding of necessity where the traditional methods of investigation will lead only
13 to the arrest and prosecution of the main conspirators, but not to other related or subordinate
14 conspirators. *Id*. at 1198. The government sufficiently proved and the district court judge
15 properly made a finding of necessity to issue the order for the wiretap.

16 ***FRANKS* HEARING** -

17 A defendant is entitled to a hearing to determine the validity of a warrant where he makes
18 a preliminary showing that the supporting affidavit includes a false statement or one made
19 with reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 155-156, 98 S.Ct.
20 2674, 2676 (1978). The defendant must make a substantial showing of the falsity, and that
21 it was made either deliberately or with reckless disregard for the truth. *U.S. v. Prime*, 431
22 F.3d 1147, 1151, n.1 (9th Cir. 2005). The same applies to omissions. *U.S. v. Meling*, 47 F.3d
23 1546, 1553 (9th Cir. 1995). For both false statements and omissions, the defendant must
24 show that they are material. *U.S. v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002).
25 They are material if the offending falsity or omission is necessary for a finding of probable
26 cause or necessity. *Meling*, supra. An affidavit in support of a search warrant is presumed
27 valid. *Franks*, 438 U.S. at 171.

28 The Court finds that the defendants have not met their burden of proving that Agent

1 Morris' affidavit contains any deliberate falsehoods, any statements indicating a reckless
2 disregard for the truth, or any material omission.  The defendants argue that the Court was
3 mislead by the false statements and omitted information, but not that there would be a lack
4 of probable cause if that information was purged from the affidavit.  If the statements
5 identified by the defendants were set aside, or if the information alleged to be omitted was
6 included in the affidavit, it would still be sufficient to support a finding of probable cause,
7 such that no hearing is required.  *Id*. at 171-72.

8 **RECOMMENDATION:**

9 In view of the foregoing, it is recommended that, after its independent review of the
10 record, the District Court **DENY** the motion to suppress evidence and for a *Franks* hearing.
11 Defense counsel may serve and file written objections within 14 days.  If objections are
12 not timely filed, the parties' right to de novo review may be waived.  No reply shall be filed
13 unless leave is granted from the District Court.
14 The Clerk of the Court is directed to send a copy of this Report and Recommendation to
15 all parties.
16 DATED this 29th day of January, 2013.

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge